### Robert Brady d/b/a Robert Brady Associates v. David Brauer and Matthew Pitoniak

[529 A.2d 159]

No. 85-213

Present: **Allen, C.J., Hill and Peck, JJ., and Barney, C.J. (Ret.), Specially Assigned**

Opinion Filed February 13, 1987

Motion for Reargument Denied April 9, 1987

*P. Scott McGee* and *Claude Thaddeus Buttrey*, Law Clerk (On the Brief), of *Hershenson, Carter, Scott and McGee*, Norwich, for Plaintiff-Appellee.

*Jon Anderson* of *Goldstein, Manello & Burak*, Burlington, and *Robert D. Cultice* and *Stephen M. Voltz* of *Goldstein & Manello*, Boston, Massachusetts, for Defendant-Appellant.

**Barney, C.J.** (Ret.), Specially Assigned. In April, 1982, a default judgment in the amount of $38,663.62, against defendant Brauer, a nonresident, was granted based on notice by publication under V.R.C.P. 4(g). This is an appeal from a denial of a motion to set aside that judgment under the provisions of V.R.C.P. 60(b). The defendant Pitoniak was personally served in Massachusetts. In 1983 he stipulated to a judgment against himself by which he agreed to pay the difference between any amount collected from defendant Brauer and $28,000, but not more than $15,000.

Brauer brought this motion in January, 1985, seeking to have this case heard on its merits and asserting the existence of valid defenses to the original action. The motion was denied below, as was a subsequent motion to reconsider which contained further allegations and affidavits in support of relief. Appeal followed.

The basic dispute involves architectural services contracted for and allegedly performed by the plaintiff in connection with a projected apartment house complex to be built in West Townshend, Vermont, by a Vermont partnership not yet in existence. The contract was executed by the plaintiff and defendant Pitoniak,

and also signed by defendant Brauer as "attorney for a limited partnership to be formed." The contract was, for the most part, a standard architectural contract with provision for disputes to be settled by arbitration, limitations on compensation for additional services and providing for no payment for schematic design services until the design had approval from the Vermont State Housing Finance Agency and the Vermont State Housing Authority.

There is a further term inserted under Article 15 of the contract which provides that no funds are "due and payable until a construction mortgage is issued on the property, at which time the architect is to be paid first." Although the contract with this provision is in the printed record as an exhibit attached to the plaintiff's original complaint, the plaintiff claims that that record is wrong and there is no such provision in the contract as actually pled. This dispute cannot be resolved in this proceeding by this Court, since it involves issues of fact not yet reduced to findings by a trier of fact.

In any event, the plaintiff, in his pleadings, alleged performance of services entitling him to $35,388.82 plus interest and costs. This claim became the default judgment.

The principal challenge to that judgment by Brauer rests on claimed due process shortcomings sufficient to amount to good cause for setting the judgment aside under V.R.C.P. 60(b)(6), even if the defects do not provide a constitutional basis on which to invalidate the entry of judgment. If relief should have been afforded under V.R.C.P. 60(b)(6), it will not be necessary to reach the constitutional issue. To resolve the question recourse must be had to the pleadings and the record. These demonstrate the circumstances of the service of process, and the information in the possession of the plaintiff most likely to have a bearing on the manner of getting notice to the defendant according to the requirements of law.

It is unquestioned that at the time of alleged performance under the contract that the plaintiff knew that Brauer was a resident of Massachusetts, living at 144 Farm Street, Dover, Massachusetts. The plaintiff acknowledged that bills for services rendered were sent to that address and not returned. It further appears from allegations made by the plaintiff in connection with this litigation that Brauer held out "to all the world" that 144 Farm Street was his residence. The plaintiff identified Brauer as

a businessman and Massachusetts attorney whose 1984 updated Bar registration showed this residence as continuing throughout the time that this suit was instituted and judgment obtained.

The actual service undertaken to legally notify the defendant of this pending litigation must be examined in the light of this information. The process was sent to Dover to be served at that address by a deputy sheriff. According to the plaintiff, when the process server went to that address, he was told by defendant's wife that Brauer no longer lived there. No copy of the process was left with her. The papers were returned to the plaintiff along with a Florida address for Brauer furnished by the wife. The process was then sent to Florida. It was returned unserved, the report being that Brauer was not known at the address given, nor discoverable in a search of the area.

This information was then presented to Windsor Superior Court in the form of an affidavit sworn to on information and belief by plaintiff's attorney, unaccompanied by any affidavits of returns of service from any process server involved. Based on this information, the plaintiff requested service by publication in a newspaper of general circulation in Windsor County with a copy to be mailed to the Florida address as the defendant's last known address. This was granted.

The provisions of V.R.C.P. 4(e) make the proper manner of service without the state the same as service within the state under V.R.C.P. 4(d). That rule provides that service be made on a defendant who is not available for personal service by leaving a copy of the summons and complaint at his dwelling or usual place of abode with some person of suitable age and discretion then resident therein. If that fails, and is properly evidenced by affidavit, the court may order that the process simply be left at the defendant's dwelling house or usual place of abode. Publication is available "if the court deems publication to be more effective." V.R.C.P. 4(d)(1).

The Reporter's Note to V.R.C.P. 4(d)(1) is significant:

> The rule permits leaving of process at the last place of abode when no suitable person is present only on motion and a showing of inability to make service by other methods. In such a case, the court has the option to permit service by publication when such service might be *more effective,* as when a dwelling house is abandoned. (Emphasis added.)

■ It is the law that the party at whose instance a writ or execution has issued, or his attorney, has the right to give the officer directions as to service, which, if lawful, he is bound to follow. *Gross* v. *Gates*, 109 Vt. 156, 162, 194 A. 465, 468 (1937). Therefore, the responsibility for any failure to fulfill the provisions of V.R.C.P. 4(d) and (e), if the opportunity was presented, must be borne by the plaintiff.

■ In seeking relief under V.R.C.P. 60(b)(6), in the face of a denial by the lower court, the defendant, as moving party, has the burden of proving that the denial below was an abuse of discretion. *Darken* v. *Mooney*, 144 Vt. 561, 566, 481 A.2d 407, 410 (1984). However, the denial of relief from a default judgment must have strong support, and a court ought to be indulgent in reopening judgments entered by default. *Vahlteich* v. *Knott*, 139 Vt. 588, 590, 433 A.2d 287, 288 (1981). A default judgment issued without the opportunity to be heard is not favored over one rendered after full hearing, and relief ought not to be denied for insufficient reasons.

Here we find that the lower court did not properly apply the remedial purposes of V.R.C.P. 60(b), because it did not adequately take into account the due process shortcomings of the service of process in this case. *Mullane* v. *Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), sets out the standards which substituted or constructive service must meet in order not to be constitutionally deficient under the due process requirements of the Fourteenth Amendment with respect to notice and opportunity to be heard. The following language at page 315 is significant:

> But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, compare *Hess* v. *Pawloski*, 247 U.S. 352, with *Wuchter* v. *Pizzutti*, 276 U.S. 13, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

It would be idle to pretend that publication alone, as prescribed here, is a reliable means of acquainting interested parties of the fact that their rights are before the courts. It is not an accident that the greater number of cases reaching this Court on the question of adequacy of notice have been concerned with actions founded on process constructively served through local newspapers. Chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper, and if he makes his home outside the area of the newspaper's normal circulation the odds that the information will never reach him are large indeed.

Taking this language together with that of V.R.C.P. 4(d) and (e), it is quite apparent that publication is not, as a method of service, the equivalent of other prescribed means. It is a process rooted in the necessity raised by the total inability of other service procedures to be used to provide notice. As the *Mullane* case states at page 318: "Exceptions in the name of necessity do not sweep away the rule that within the limits of practicability notice must be such as is reasonably calculated to reach interested parties." Therefore, to fulfill its legal function, the publication ordered must be "reasonably calculated" to notify a defendant of the proceedings against him. *Kittanning Coal Co. v. International Mining Co.*, 551 F. Supp. 834, 836 (W.D. Pa. 1982) (good faith effort to effectuate service required before resort to publication). If that is not accomplished publication may be seriously deficient.

Standing alone, the publication in Windsor County, Vermont, is certainly not apt to catch the eye of a resident of Dover, Massachusetts. Undoubtedly for this reason, V.R.C.P. 4(g)(2) also provides that the publication order shall direct the mailing to the defendant, if his address is known, of a copy of the order as published. Such a mailing was undertaken here.

Although the attempted Florida service had been returned without the defendant having been located or known there, the mailing under the publication order was sent back to Florida rather than to the Dover, Massachusetts, address. At least the sending of an additional copy to Dover might have seemed indicated, but nothing was sent. There is no doubt that this publication together with the Florida notice is not sufficient to rescue the

whole process from the condemnation that it was less likely to bring home notice of the litigation to the defendant than any of the other feasible and authorized substitutes. The plaintiff forcefully asserts that the defendant must have had actual knowledge of this litigation because correspondence pertaining to the litigation was sent to 144 Farm Street, Dover, and not returned. He further pointed out that service of certain documents intended for the defendant were made on his wife at that same residence as provided by law. Yet, in spite of this evidence of service in legal form in related circumstances by the plaintiff, the methodology of such service was apparently lost sight of in connection with the most critical service of all, the initiation of this lawsuit.

■ The court below was correct in determining that this case falls within the ambit of V.R.C.P 60(b)(6). However, the conclusion of that court that the service by publication in this case was sufficient notice to bar relief under V.R.C.P. 60(b)(6) cannot stand. The default judgment must be stricken.

It is the plaintiff's further position that even if there are shortcomings in the service of process, the defendant has, in effect, waived them by failing to timely raise the issue. It is true that lack of personal service can be waived and jurisdiction obtained thereby. See *Lafko* v. *Lafko*, 127 Vt. 609, 612, 256 A.2d 166, 168 (1969). It is the plaintiff's argument that, at the very least, the defendant's admitted delay of some four months in seeking relief after notice came to him of the existence of the lawsuit was long enough to serve to validate the default judgment.

We do not agree. Where the flaw in the proceedings is lack of any notice sufficiently complying with due process standards, the shortage cannot be supplied by the implication of waiver without any evidence of actual notice. See *Myers* v. *Brown*, 143 Vt. 159, 166, 465 A.2d 254, 258 (1983). Thus, the only time lapse involved is that four month period following admitted actual notice. This is not sufficient to bar relief under the rule of liberal construction set out in *Cliche* v. *Cliche*, 143 Vt. 301, 306, 466 A.2d 314, 316 (1983).

In connection with his petition to strike the default judgment, on denial, the defendant moved for reconsideration and filed further memoranda and a certificate asserting meritorious defenses. The plaintiff contends that these are not properly in the case, being filed after the original denial of the motion to strike. If the issues were not considered by the lower court, or rejected as un-

timely, the plaintiff's position would be stronger. But it affirmatively appears that this material was before the lower court when it dealt with the motion to reconsider, and the order of denial itself states that it is based on the pleadings and memoranda filed. Therefore, we must treat those issues as raised below. Since several defenses sufficient to satisfy the requirements of V.R.C.P. 60(b) appear on the record, among them a notice of termination of the contract sent to the plaintiff in 1979, plaintiff's contention is unavailing.

*The order denying relief under V.R.C.P. 60(b)(6) is reversed. Let an order striking the default judgment in this case be entered, and the cause is remanded for further proceedings, including the filing of answering pleadings within 30 days of the remand, if the defendant be so advised.*